**IN THE COURT OF APPEALS OF IOWA**

No. 23-0178
Filed April 26, 2023

**IN THE INTEREST OF E.W.,**
**Minor Child,**

**K.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Winneshiek County, Linnea M.N. Nicol, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Kevin Stinn of Swartz Law Firm, PLLC, Waukon, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kristin R. Schiller Herman, Calmar, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights. He claims the State did not establish a ground for termination, that termination is not in the child's best interests, and that the court should have applied an exception to termination due to his bond with the child. He also asks for a six-month extension for reunification efforts, and contends the Iowa Department of Health and Human Services (HHS) failed to make reasonable efforts. We conclude the State established a ground for termination and that termination of the father's parental rights is in the child's best interests. We decline to apply an exception or grant a six-month extension. And we conclude the father did not preserve his claim pertaining to reasonable efforts and, even if he had, the claim lacks merit. We affirm.

## I.       Background Facts and Proceedings

E.W., who was born in March 2021, her two siblings, and her mother came to HHS attention in early 2021 because of concerns over the mother's substance abuse.[1] At the time E.W. was born, she tested positive for THC and Tramadol. The mother was arrested in June after she was found with methamphetamine and drug paraphernalia in the car with E.W. and another child. E.W. and the other children were removed from the mother's custody and subsequently adjudicated as in need of assistance under Iowa Code section 232.2(6)(c)(2) (2021). Since then, the siblings have resided together albeit at several different foster care placements. They currently live with a foster family where they have resided since

---

[1] The three siblings each have a different father. The mother and two other fathers had their parental rights terminated in these proceedings but do not appeal.

June 2022. The children appear to be doing well in that placement, which has expressed interest in adopting all three children.

Despite being informed by the mother that he was the father of E.W. early on in the mother's pregnancy, the father failed to undertake court-ordered paternity testing until he was arrested in March 2022 on drug-related charges. That testing confirmed he was the biological father of E.W. During the period leading up to his arrest, the father reported daily use of methamphetamine. At the time of the termination hearing, having violated his probation, the father was placed on the corrections continuum to include placement at a residential treatment facility "for one year or until maximum benefits are reached." It is unclear when he will be discharged from that facility. The father also had pending charges for operating while intoxicated, third offense; possession of methamphetamine; possession of a controlled substance, alprazolam; and unlawful possession of a prescription drug.

The father's involvement in services has been very limited. He has only attended three visits with E.W., which occurred in July and August 2022. He failed to attend ten other visits offered in September and October, tracking a long history of his lack of communication with HHS and lack of participation in services.

The State moved to terminate the father's parental rights on August 23, 2022. Following a hearing, the court terminated the father's parental rights under Iowa Code section 232.116(1)(e) and (f) (2022). The father appeals.

## II.    Standard of Review

We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). As always, the child's best interests remain "the first and governing consideration" of this court. Iowa R. App. P. 6.904(3)(o).

## III.    Discussion

The father raises several claims on appeal.  He contends the State did not establish a ground for termination.  He asserts termination is not in the child's best interests due to his close bond with E.W.  He also requests a six-month extension.  Finally, he claims HHS did not make reasonable efforts for reunification, highlighting the lack of visits between himself and E.W.

### A.    Ground for Termination

The juvenile court terminated the father's parental rights under Iowa Code section 232.116(e) and (f).  However, the termination petition, as amended, sought to terminate the father's parental rights under section 232.116(e), (h), and (*l*)—not (f).[2]  The only substantive difference between (f) and (h) is the age of the child—(h) being used for children three years old or younger, and (f) for children four years or older.  Our supreme court addressed a similar issue in *In re M.W.*, 876 N.W.2d 212 (2016).  The supreme court affirmed the termination of parental rights on a ground raised by the State in its termination petition but which was omitted from the juvenile court's ruling.  *M.W.*, 876 N.W.2d at 221.  Following the holding of *M.W.*, we consider (h) as a ground for termination in this appeal.

On appeal, the father only challenges the court's findings as to (e).  "When a juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the

---

[2] The father did not raise this error to the district court and does not challenge it on appeal.  We also note the district court cited the correct statutory ground throughout the body of the order and in the decree portion with respect to the mother's parental rights, which points to the use of 232.116(1)(f) as a typographical error.  But as noted, the father does not challenge this ground.

record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because the father does not challenge the court's findings under (f)—and by extension, (h)—we affirm as to (h).[3] *See P.L.*, 778 N.W.2d at 40 (noting that when a parent does not dispute the existence of a ground to terminate, we may affirm on those grounds). Even if the father had contested this ground, on our de novo review, we determine the State proved by clear and convincing evidence all the elements of the statutory ground found in Iowa Code section 232.116(1)(h). E.W. is under the age of three, she has been adjudicated a child in need of assistance, removed from parental custody for at least the last six consecutive months, and could not be safely returned home at the time of the termination hearing.

### B.    Best Interest of the Child and Statutory Exception

The father asserts termination is not in the child's best interests. He claims the State never introduced evidence suggesting he was an unsafe parent. "In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Upon our de novo review, we determine the termination is in the best interests of E.W. It is true that in the three visits the father had with E.W., the service provider did not note any safety concerns. But at the time of termination the father was residing in a correctional facility. He did not have stable housing or employment. While he claims to have been sober since March 2022, that only

---

[3] Indeed, in the father's closing argument to the juvenile court, the father conceded that (h) "can likely be met."

occurred due to his imprisonment. There is no evidence he will be able to maintain his sobriety upon his release. And he has only met the child three times. He showed no interest in the child until paternity was established in March 2022—also when he was imprisoned. The child is integrated into the foster family, recognizing the foster family as her parents. *See id.* § 232.116(2). And the HHS caseworker testified that it would be unlikely for the father to adopt E.W.'s siblings due to his prior involvements in termination proceedings. As a result, declining to terminate would require the siblings to be separated. *See id.* § 232.108(1) (explaining a preference to keep siblings together). Termination is in E.W.'s best interests.

The father also claims the juvenile court should have declined to terminate his parental rights because of the close bond he shares with the child. *See id.* § 232.116(3)(c). But the father has only met the child three times, and waited late in the game to do so. After those three visits, he missed the next ten opportunities to see the child leading up to the termination hearing. Given such limited contact and the child's young age, we cannot say termination of the father's parental rights would be detrimental to E.W.

### C. Six-Month Extension

The father asks for a six-month extension for reunification efforts. A juvenile court may decline to terminate parental rights and instead provide the parent a six-month extension. *See id.* § 232.104(2)(b). To do so, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.*

Little suggests the need for removal will be rectified with an additional six months. The father waited until he was imprisoned to comply with the court's order for paternity testing, and even then, only met E.W. three times in July and August 2022. He has not engaged in services, for reasons as simple as over-sleeping. He currently resides in a correctional facility—the record does not indicate when he will be released. Because the record does not support that the need for E.W.'s removal will be rectified in six months, we determine the juvenile court properly declined to grant a six-month extension.

**D.      Reasonable Efforts**

The father claims HHS failed to make reasonable efforts to reunify the family. In particular, he highlights the lack of visits between himself and E.W., blaming HHS for failing to coordinate visits and ensure he had transportation to attend them. HHS has an obligation to provide reasonable efforts to reunify the family. *See* id. § 232.102A(1)(a) (defining reasonable efforts). The need to make reasonable efforts "covers both the efforts to prevent and eliminate the need for removal," and may include "visitation designed to facilitate reunification." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

The father's claim fails for two reasons. First, error was not preserved on this issue. It is not enough to discuss an issue with HHS. Instead,

> [w]hile the State has an obligation to provide reasonable services to preserve the family unit, it is the parent's responsibility "to demand other, different, or additional services *prior* to the termination hearing." Complaints regarding services are properly raised "at removal, when the case permanency plan is entered, or at later review hearings." Where a parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." Similarly, we will not

> review a reasonable efforts claim unless it is raised prior to the termination hearing.

*In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) (internal citations omitted). The father did not raise a challenge to the lack of reasonable efforts to the juvenile court prior to the termination hearing. The father admits such in his briefing. And the juvenile court found reasonable efforts had been provided by HHS in each review order and permanency order. As a result, the matter is not preserved.

Second, the fault for the limited number of visits lies with the father. Service providers testified that they attempted to contact the father numerous times to establish visitation and other services, but the father would not respond. As previously noted, the father was offered ten visits in September and October, but failed to attend a single one. HHS has an obligation to offer reasonable services. After that, it is incumbent upon the parent to utilize them. The father declined to utilize the offered services. We affirm the juvenile court.

**AFFIRMED.**